Affirmed.

30 C.C.P.A. (Patents)

**In re MIMS.**

**Patent Appeal No. 4699.**

Court of Customs and Patent Appeals.

Feb. 1, 1943.

938

William C. Linton, of Washington, D. C. (Ulle C. Linton, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

Appellant has here brought before us for review a decision of the Board of Appeals of the United States Patent Office affirm-ing a decision of the Primary Examiner rejecting claims 17, 18 and 20 of appellant's application for a patent, Serial No. 276,094. No claims were allowed.

The claims were rejected upon two grounds:

1. That they are unpatentable because they claim matter not disclosed in the original specification.

2. That they are unpatentable over the cited prior art.

The claims read as follows:

"17. The method of harnessing or *controling* light and short staple fibrous materials such as kapok, whereby the latter may be formed into a continuous sliver, which co*n*prises the steps of placing the light fibrous materials upon a continuously travelling conveyor, *arrangeing* the material upon said conveyor until formed into a sliver without the application of pressure that would tend to bruise or crush the fibers thereof, distributing the fibers of the material while upon said conveyor until the so formed sliver has the same consistency throughout, maintaining the thickness of the sliver while upon said conveyor and finally permanently connecting the fibers together.

"18. The method of producing a sheet without the use of covering materials from a loosely agglomerated mass of fibrous material in a continuous and progressive manner, which comprises the steps of mechanically arranging said *fiberous* material until performed into sheet, distributing the material of said preformed sheet until the latter has a desired density throughout, further distributing the fibers of said material until the sheet has a uniform thickness throughout and finally sewing the fibers of the material together whereby the same will be permanently retained in the sheet as preformed."

"20. The method of forming kapok into a continuous blanket without the use of covering materials, which comprises the steps of placing the loosely agglomerated fibers of kapok upon a continously travelling conveyor, distributing the fibers of the kapok upon said conveyor until a blanket is formed, further distributing the fibers of kapok until the so formed blanket has the same consistency throughout, further distributing the fibers of said preformed blanket until the latter has the same thickness throughout without the application of pressure that would tend to bruise or crush the fibers of the kapok and then

sewing said fibres of kapok of the so preformed blanket together."

In view of our conclusion with respect to the first ground of rejection it is unnecessary for us to cite or discuss the references.

Appellant's application was filed on May 27, 1939, and is entitled "For Method for Forming sheets or fabrics from Kapok or other Staple Fibres."

The oath of the applicant accompanying the application states that it "is a division of my application Ser. No. 107,899, filed October 27, 1936."

At the time of filing appellant's instant application, his attorney also filed certain proposed amendments thereof.

These amendments were entitled "Amendment Before Filing."

These amendments were signed by appellant's attorney, but not by appellant, nor were the amendments accompanied by a "Supplemental Oath." It appears from the record that said proposed amendments were not entered until after November 7, 1940, when a supplemental oath of appellant executed by him on September 26, 1940, was filed.

With regard to the general subject matter of appellant's alleged invention, his instant application as filed states:

"This invention is concerned with the formation of sheets or fabrics of a wadding like nature produced by machining lines of stitching in a loosely agglomerated mass of kapok or other like light and delicate fibre held lightly between guide devices adapted to convey the material to the machine performing the stitching.

\*     \*     \*     \*     \*

"The present invention seeks to provide an improved method which will enable sewn sheets or fabrics of fibrous material of the kind indicated to be produced with convenience in large sizes or if desired in the form of a continuous web."

Appellant's first amendment reads as follows: "The present invention relates to a method of harnessing or controlling light and short staple fibrous materials such as kapok, whereby the latter may be formed in a continuous manner into sheets, blankets or fabrics of a wadding-like nature without the necessity of sewing the fibres between sheets of paper, woven fabrics or the like covering materials and yet the sheets so produced will be of uniform thickness and have substantially the same density throughout. The present application is a (division and) continuation in part of my copending application Serial Number 107,-899, filed October 27, 1936."

Other amendments include the following addition to the specification as filed:

"By depositing the loose fibres of kapok upon the table o of the machine herein described, the bands b will convey the same until it comes in contact with the bands c of the upper carrier. This loosely deposited mass of kapok will *first be distributed* over the table top until it assumes the form of a sheet or layer. As this sheet or layer of kapok is being further conveyed between the carriers, the fibres thereof are *further distributed until the layer assumes the required consistency and thickness*. This preformed sheet or layer of kapok is then fed below the thickness regulator k whereat this preformed sheet is retained as formed.

"This thickness regulator is substituted for the standard presser foot of the sewing machine and through the adjustable supporting means provided for the presser foot, it may be moved to and from the table top and retained in the desired adjusted position.

"The preformed wadding of kapok will travel *lightly* below the thickness regulator whereat its general thickness will be maintained without any marked pressure thereupon. Therefore, this thickness regulator, in addition to the foregoing, will act as an ordinary *stripper of the sewing machine*, that is, will limit the upward movement of the wad or fibres thereof with the needles of the sewing machine." (Italics supplied)

Appellant's instant application as filed contained the following: "Adustable *(adjustable)* presser feet fitted with rollers k adapted to engage the upper grid immediately in front and behind the sewing needles may also be provided on the machine."

Appellant's amendment changed the above quoted language so as to read as follows: "An adjustable *thickness regulator* fitted with rollers k, adapted to engage the upper *bands* immediately in front and behind the sewing needles, may also be provided on the machine. These rollers press but lightly upon the upper carrier and really act to determine the degree of separation between the opposed bands. They do not serve to apply any marked pressure to the material. This thickness regulator with its rollers acts to prevent any upward

movement of the fibre when the needle is pulled upward."

The amendment also inserted in the application as filed the following: "It is to be understood that the element d with the rollers k does not act like the ordinary presser foot of a sewing machine but merely bears lightly against the upper flexible element c. If this element d were forced downward in the manner of the presser foot of an ordinary sewing machine, it would compress the fibres and drive out the air and form a hump in the material in advance of the element d. The rollers k simply act to hold the upper flight of the element c lightly against the bat of fibrous material without any compression."

Appellant's parent application, Serial No. 107,899, is for the most part identical with appellant's instant application as filed. There is found in the record immediately following Serial No. 107,899, as filed, what is entitled "Specification As Amended," which conforms in most respects to appellant's instant application as amended. However, neither in the parent application as filed nor in the "Specification As Amended" is there disclosed the second step of distributing the fibres "while upon said conveyor until the so formed sliver has the same consistency throughout." While the "Specification As Amended" states that the sheets produced will be of uniform thickness and have substantially the same density throughout, said second step is nowhere disclosed or suggested.

Appellant's parent application as filed contained the following method claim: "1. An improved method of producing sheets or fabrics of the kind herein indicated consisting in conveying the loosely agglomerated fibre to the needles of a sewing machine and holding it during the sewing operation between opposed grids, the individual bars of which are in the form of endless flexible elements associated with rotating drums or rollers."

Appellant's brief states that this claim was cancelled.

It appears that appellant's parent application was considered by us in the case In re Mims, 118 F.2d 354, 28 C.C.P.A. (Patents) 962, from which it appears that the only claims finally made were apparatus claims, which were rejected by the Patent Office tribunals as not patentable over the cited prior art. We affirmed such ground of rejection. It does not appear from our opinion that any question of new matter was raised or decided in that case.

That each of the claims before us is drawn to matter not disclosed in appellant's instant application as filed we have no doubt.

Nowhere in said application is there suggested the arranging of the material while upon the conveyor so as to form slivers of the same consistency throughout as called for by claim 17, or distributing the material of the preformed sheet until the latter has a desired density throughout, and further distributing the fibers of the material until the sheet has a uniform thickness throughout as called for in claim 18, or distributing the fibers of the material until a blanket is formed and further distributing the fibers until the so formed blanket has the same consistency throughout as called for in claim 19.

Furthermore, it will be observed from the amendments above quoted that the instant application as filed disclosed "adjustable presser feet." The amendment struck out these words and substituted the words "an adjustable thickness regulator."

Appellant in his brief states:

"The appellant contends that he has not added any new substantive matter to his application, but merely an amplification of the original specification involving certain critical steps of his method and which amplification is supported by the appellant's earlier art disclosure.

"The applicant was certainly justified in adding the amplified description contained in his 'Amendment Before Filing' as a cure to the imperfectly described invention, just as was done by amendment in the parent application. Persons competent to understand and appreciate the invention could readily state the novel steps of the method as claimed upon seeing the machine made in accordance with that disclosed in the original drawing when in operation."

The difficulty with appellant's contention is that the method here claimed is not described at all or suggested in his application as filed. Neither can we agree with appellant that one skilled in the art upon seeing a machine made in accordance with the drawings of his application could readily state the steps of the method here claimed.

In the cancelled method claim of his parent application as filed there is no suggestion of the method here claimed, and it

is evident that a machine made in accordance with the drawings could be normally operated without employing all of the steps set out in the claims.

Appellant makes another contention that his parent application having been amended so as to include, as he claims, the steps of the method here claimed, he had the right to amend his instant application in the manner hereinbefore stated.

We may assume that in this case if the amendment to his parent application did not contain new matter, appellant would have the right to incorporate in his instant application by way of amendment the subject matter of that application as amended, but we cannot agree with him that the question of whether his amendments to his parent application included new matter may not be inquired into.

After the cancellation of his method claim in his parent application, only *structure* of the apparatus disclosed was involved and the method of its operation here claimed was not a necessary element of his alleged invention claimed in that application.

At any rate, it does not appear that the Patent Office tribunals considered the question of new matter in his amendments to his parent application, presumably because the method of operation here claimed had no bearing upon the question of the patentability of the structure.

■ Under these circumstances we have no doubt that inasmuch as appellant's amendments to his parent application disclosed matter not described or suggested in his parent application as filed, he may not base amendments to his instant application upon such new matter found in his amendments to his parent application.

Rules 48 and 70, in so far as they are here pertinent, of the Rules of Practice in the United States Patent Office, 35 U.S.C.A. Appendix, read as follows:

"Rule 48. When an applicant presents a claim for matter originally shown or described but not substantially embraced in the statement of invention or claim originally presented, he shall file a supplemental oath to the effect that the subject matter of the proposed amendment was part of his invention, was invented before he filed his original application; that he does not know and does not believe that the same was ever known or used before his invention or discovery thereof, * * * or more than one year before his application, or in public use or on sale in the United States for more than one year before the date of his application, that said invention has not been patented in any foreign country on an application filed by himself or his legal representatives or assigns more than twelve months prior to his application in the United States, and has not been abandoned. Such supplemental oath must be attached to and properly identify the proposed amendment."

"Rule 70. In original applications all amendments of the drawings or specifications, and all additions thereto, must conform to at least one of them as it was at the time of the filing of the application. Matter not found in either, involving a departure from the original invention, can not be added to the application even though supported by a supplemental oath, and can be shown or claimed only in a separate application."

It is appellant's contention that inasmuch as supplemental oaths were filed in connection with the amendments to both the instant and parent applications, the Board of Appeals erred in holding that said amendments could not be considered.

■ As to the effect of a supplementary oath filed with respect to new matter added to applications, Rule 70, supra, is explicit that that may not be done where the matter added by amendment is not found in the original application and involves a departure from the original invention.

That the matter added by said amendments and here claimed does involve a departure from the alleged invention set forth in appellant's instant and parent applications is clear.

Appellant's brief states:

"If the new and critical steps of appellant's method as recited in these claims 17, 18 and 20, to-wit:

"1. Arranging the material until formed into a sheet or sliver without the application of pressure that would tend to bruise or crush the fibers thereof.

"2. Distributing the fibers of the material until the sliver has the required consistency or density throughout.

"3. Maintaining the thickness of the so preformed sheet, and

"4. Permanently connecting the fibers of the material whereby the so preformed sheet is maintained., involve new matter, and these recited steps of appellant's method cannot be considered, then, and in that event, the claims 17, 18 and 20 would not be patentable over that

of Thompson, Fleckenstein, Arbin or Mims, and the sole issue therefore appears to be whether the above recited steps of appellant's method are new or disconforming matter."

It will be observed that appellant concedes that all of the steps quoted are new and critical, and inasmuch as we find that the first two steps above quoted have no basis in appellant's instant or parent application, a departure from the alleged invention disclosed in his original application is involved. Moreover, it will be observed that in the cancelled claim hereinbefore quoted only the fourth step is claimed.

 Therefore, under said Rule 70, the supplemental oaths above referred to cannot relieve said amendments from the inquiry of whether new matter is involved therein, and if involved, such new matter may not be considered in passing upon the claims.

In this connection we would observe that Section 4892 of the Revised Statutes, Title 35 U.S.C.A. § 35, makes no provision for a supplemental oath, and the only rule of the Patent Office permitting it is Rule 48 hereinbefore quoted, which is not applicable here for the reason that the amendments include matter not "shown or described" in either appellant's instant application as filed or in his parent application as filed.

Appellant's supplemental oath in connection with the amendments to his instant application was not filed until November 7, 1940, nearly a year and a half after the filing date of his application. He could have filed within that time a new application embodying all of the matter included in his instant application as amended, but in that case his constructive reduction to practice of his alleged invention would take the date of his new application. Apparently the reason this was not done was because appellant desired to secure the benefit of the filing date of his instant application, May 27, 1939, and also the date of his parent application for such constructive reduction to practice.

It is true that there are many cases in equity involving infringement of patents, holding that where a patent has been issued upon an application which has been amended, accompanied by a supplemental oath, such patent will not be declared invalid on the ground that the amendments constituted new matter added to the original application.

In the case of Heller Bros. Co. v. Crucible Steel Co. of America, 297 F. 39, 43, decided by the Court of Appeals, Third Circuit, Rule 48, supra, was briefly discussed as follows: "Rule 48 of the Patent Office, which has magnified, if it has not given rise, to the confusion with respect to the question of the supplemental oath, cannot affect this conclusion. At most, as we understand it, it is but a rule of Patent Office Procedure, promulgated upon the authority of R.S. § 483 (Comp.St. § 745 [35 U.S.C.A. § 6]). If valid, and we deem it unnecessary to pass upon that, *it has no bearing upon the question of validity of a patent when issued.* It has not been here relied upon by the defendant." (Italics supplied)

 There is no contention here that said Rule 48 is invalid, and it is clear that it does not authorize the filing of the supplemental oaths here involved, because the claims here involved include material elements not "shown or described" in either his instant or his parent application as filed. This being a proceeding in the Patent Office prior to the issue of a patent, the cases respecting the validity of issued patents are not applicable here. Appellant concedes that the sole issue before us is whether the involved claims are drawn to "new or disconforming" matter. Inasmuch as we are convinced that the Board of Appeals did not err in holding that the claims are not patentable in this proceeding because drawn to new matter, its decision is affirmed.

Affirmed.